**FILED**
**JANUARY 23, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES RIVER ASSOCIATES, INC.; a Massachusetts corporation authorized to transact business in Illinois,<br><br>Plaintiff,<br><br>v.<br><br>J. P. HOLDINGS, INC., an Illinois corporation, and JAMES P. HALLBERG, individually,<br><br>Defendants. | Case No.<br><br>**08 C 496**<br><br>**JUDGE KENDALL**<br>**MAGISTRATE JUDGE VALDEZ** |

### COMPLAINT

**NOW COMES** the Plaintiff, CHARLES RIVER ASSOCIATES, INC., a Massachusetts corporation authorized to transact business in Illinois ("CRA"), by and through its attorneys, Coston & Rademacher, and complains as follows against Defendants, J. P. HOLDINGS, INC., an Illinois corporation ("JP HOLDINGS"), and JAMES P. HALLBERG, individually ("HALLBERG").

### NATURE OF ACTION

1. This action arises out of JP HOLDINGS' and HALLBERG's refusal and failure to pay for expert witness costs and services incurred by non-party Intecap.

### JURISDICTION

2. Plaintiff, herein, CRA is a corporation organized under the laws of the State of Massachusetts, with its principal place of business in Boston, Massachusetts.

3. On information and belief, Defendant JP HOLDINGS is an Illinois corporation organized under the laws of the State of Illinois, with its principal place of business at 6640 S. Cicero Ave., 4th Flr., Bedford Park, IL 60638.

4. On information and belief, Defendant HALLBERG is a citizen of the State of Illinois and resides at 6640 S. Cicero Ave., 4th Flr., Bedford Park, IL 60638.

5. The amount in controversy exceeds $75,000.00 exclusive of interest and costs that may be heard by this Court.

6. The contracts giving rise to this action were executed by Defendants in Chicago, Illinois.

7. Venue is proper in this action pursuant to 28 USC §1391(a) in that a substantial part of the events giving rise to this claim occurred in Chicago, Illinois.

## COUNT I
## BREACH OF CONTRACT

8. Prior to the events that created the basis for this lawsuit, Defendants engaged the services of non-party, Schwartz, Cooper, Greenberger & Krauss ("SCGK"). Subsequently, on or about April 6, 2005, HALLBERG and JP HOLDINGS, through their agent SCGK, signed a retention letter (the "Agreement") with CRA for CRA to provide consulting expert services to HALLBERG and JP HOLDINGS. A true and correct copy of the Agreement is attached hereto and incorporated herein as Exhibit A.

9. The terms of the Agreement provide for payment of a retainer in the amount of $15,000.00, and payment of invoices submitted every four weeks.

10. CRA performed its obligation pursuant to the Agreement by, among other things, providing services to Defendants.

11.     Defendants have breached the Agreement in that, beginning in October 2005 and continuing through the month of December, 2006, HALLBERG and JP HOLDINGS failed to pay several past due invoices.

12.     Therefore, as of July 20, 2007, CRA claimed as due and owing from Defendants a balance of $103,806.76 (see attached Exhibit B).

13.     The above sum has been repeatedly requested from Defendants. However, Defendants have failed and refused to pay said sum to CRA. Said sum is now past due and owing.

**WHEREFORE**, Plaintiff, CRA INTERNATIONAL, INC., a Massachusetts corporation authorized to transact business in Illinois, prays for judgment against Defendants JAMES P. HALLBERG, individually and J. P. HOLDINGS, INC., an Illinois corporation, in the sum of $103,806.76, plus costs, interest and attorneys' fees, and such further legal and equitable relief as this Court deems appropriate.

## COUNT II
## QUANTUM MERUIT

14.     CRA realleges each and every allegation contained in paragraphs 1 through 13 of this Complaint and by reference thereto incorporates the same herein as though fully set forth and alleged herein.

15.     As of July 20, 2007, CRA had provided goods and services to Defendants. Since at least July 20, 2007, Defendants have failed and refused to pay CRA for $103,806.76 worth of goods and services rendered by CRA to Defendants.

16.     As a result of Defendants' refusal to pay CRA for the goods and services rendered, Defendants have been unjustly enriched in the amount of $103,806.76.

**WHEREFORE**, Plaintiff, CRA INTERNATIONAL, INC., a Massachusetts corporation authorized to transact business in Illinois, prays for judgment against Defendants, JAMES P. HALLBERG, individually, and J. P. HOLDINGS, INC., an Illinois corporation, in the sum of $103,806.76, plus costs, interest and attorneys' fees, and such further legal and equitable relief as this Court deems appropriate.

                        CRA INTERNATIONAL, INC.,
                        a Massachusetts corporation authorized
                        to transact business in Illinois

By: _____
            One of its Attorneys

Patricia E. Rademacher (06205831)
Maysoun Iqal (005855)
COSTON & RADEMACHER
105 W. Adams, Suite 1400
Chicago, IL 60603
Telephone: (312) 205-1005

EXHIBIT A

7458

**INTECAP**
*a subsidiary of Charles River Associates*

101 North Wacker Drive
Suite 1600
Chicago, IL 60606

Telephone: (312) 357-1000
Facsimile: (312) 357-1001

www.intecap.com

April 6, 2005

John L. Conlon, Esq.
Schwartz, Cooper, Greenberger & Krauss
180 North LaSalle Street
Suite 2700
Chicago, IL 60601

Re:   InsureOne, LLC v. James P. Hallberg, et al.

Dear Mr. Conlon:

I would like your confirmation that effective April 6, 2005, Schwartz, Cooper, Greenberger & Krauss (hereinafter "SCGK") has retained InteCap, Inc., (hereinafter "InteCap"), a subsidiary of Charles River Associates Incorporated (CRA), to assist you in the above-captioned matter pertaining to your client, James P. Hallberg, et al. (hereinafter "Hallberg").

In establishing and maintaining good relationships with clients, we have found it important to provide each client with a statement of our engagement practices and our billing policies. These practices and policies are intended to safeguard our client information, establish reasonable fees for our services, and provide for the billing and collection of fees in a timely manner.

All documents provided to InteCap by SCGK or Hallberg are the property of SCGK or Hallberg. Following termination, any nonpublic information you have supplied to InteCap, which is retained by us, will be kept confidential with at least the same degree of care as we use for our own materials. If, upon such termination, you wish, at Hallberg's expense, to have any such documents stored by us, delivered to you, or destroyed, please advise us. Otherwise, all such documents will be transferred to the person responsible for administering our client document storage program. For various reasons, including the minimization of unnecessary storage expense, we reserve the right to destroy or otherwise dispose of any such documents.

All of InteCap's client work is confidential. InteCap staff members and consultants have signed confidentiality agreements and are obligated not to disclose any confidential information or documents used or obtained in the course of our studies. This obligation of confidentiality does not apply to data or information that (1) is or becomes generally available to the public other than as a result of a disclosure by InteCap or any of its representatives; (2) is required to be disclosed pursuant to any subpoena, order, or decree of any appropriate court or governmental agency; (3) was in InteCap's possession prior to the time it was disclosed to InteCap by you or your client; or (4) is disclosed to InteCap by a third party which is under no obligation of

ECONOMICS ♦ VALUATION ♦ STRATEGY



John L. Conlon, Esq.
Schwartz, Cooper, Greenberger & Krauss
April 6, 2005
Page 2

confidentiality to you or your client. The terms of this paragraph shall survive termination and/or expiration of this agreement.

The present agreement to provide services to Hallberg is limited to this matter, described above, for which you have engaged us. As you are aware, we are a large consulting firm, and we consult and/or provide expert services to many other clients. It is possible that some of our present or future clients will have disputes or other dealings with Hallberg or its affiliates during the time that we are consulting and/or providing expert services to Hallberg in the current matter. You and Hallberg agree that we may continue to consult to, or may undertake in the future to consult to and/or provide expert services, to existing or new clients in any matter, including litigation, other legal proceedings, or consulting engagements, which are or may be directly adverse to Hallberg and you, or on behalf of other clients that may be competitive with Hallberg or you, provided that InteCap will not be adverse to the client in this particular matter, and that InteCap will not voluntarily exchange any data or information that may compromise the strictures of confidentiality governing this matter. The relationship of InteCap and Hallberg is solely that of independent contractors. In no event shall this agreement or any work performed by InteCap create a relationship of principal and agent, partnership, joint venture, or any fiduciary relationship between the parties.

Under this Agreement, InteCap will provide consulting expert services to SCGK at your request. InteCap, through the professionals assigned to this matter, will conduct independent, objective analyses and may prepare an expert report containing our conclusions and opinions. If necessary, we will be prepared to testify to those opinions at deposition and trial at SCGK's request.

All invoices will be submitted to SCGK for payment. Although InteCap has been retained by SCGK to provide consulting services with respect to matters pertaining to Hallberg, we recognize that Hallberg is our ultimate client. InteCap will look to SCGK for assistance in collection of all fees owed to InteCap by Hallberg, and SCGK agrees to promptly forward all invoices to Hallberg. Our billing and payment policies are described in Exhibit A to this letter, which is incorporated herein. In order to proceed, we request a retainer in the amount of $15,000 which will be applied to our final invoice.

The total liability of InteCap and CRA shall be limited to the total amount of fees paid to InteCap under this engagement. Under no circumstances shall InteCap or CRA be liable for consequential, punitive, incidental, or special damages or claims in the nature of lost profits, lost revenue, or lost opportunity costs. The terms of this paragraph shall survive termination and/or the expiration of this agreement.



John L. Conlon, Esq.
Schwartz, Cooper, Greenberger & Krauss
April 6, 2005
Page 3

If the above meets with your approval, and your client has agreed to our retention, please sign and date a copy of this letter and return it to me. Thank you for your confidence in our ability to assist your client. We look forward to working with you.

Sincerely yours,

InteCap, Inc.

John R. Bone
Vice President

JRB/mil

Enclosure

Accepted by:

_____
Signature

JOHN C. CONLON
Print Name and Title

SCHWARTZ COOPER
Print Company Name

7/11/05
Date


A subsidiary of Charles River Associates

## EXHIBIT A
### InteCap, Inc.

| | Hourly Rate Range |
|---|---|
| President & Vice Presidents | US$370–US$575 |
| Senior Consultants | US$350–US$600 |
| Principals | US$310–US$370 |
| Associate Principals | US$285–US$310 |
| Senior Associates | US$240–US$285 |
| Consulting Associates | US$195–US$240 |
| Associates | US$150–US$195 |
| Analysts | US$150–US$165 |
| Other Support | US$75–US$120 |

InteCap provides consulting services in connection with projects on a time-and-materials basis and bills clients for actual hours worked according to the rates shown above. Ordinarily, we submit invoices every four weeks, but we may submit them more frequently, if appropriate, in light of the engagement. All invoices are due and payable upon receipt. InteCap reserves the option to charge interest on invoices that are outstanding more than 30 days, at a rate equal to the lower of 1.5 percent per month or the maximum rate permitted under applicable law. To ensure that our work proceeds uninterrupted, it is important to keep your account with us current. We reserve the right to discontinue work, to decline to give testimony, or provide other work product if bills are overdue. In the event that InteCap is required to undertake collection efforts for unpaid invoices, client shall also be responsible for payment of InteCap's attorneys' fees and costs associated therewith. CRA shall be paid for services (including any expenses) provided in connection with any subpoena, administrative or legal proceeding, or discovery requests that may arise during or after conclusion of the services provided herein, or termination of this agreement, provided only that CRA has given the client prior written notice and a reasonable opportunity to object and/or move to quash, before CRA complies with such subpoena or discovery request.

Expenses for travel, outside photocopying, and data acquisition are billed at cost. Miscellaneous expenses for telephone, facsimile, on-site copying, on-line information resources, courier, shipping, postage, and supplies are allocated on a *pro rata* basis and are billed at the average cost to InteCap across all projects. The current charge for these costs is $12.83/labor hour. Standard fees for use of computer hardware, software, support, and network services are US$15/labor hour. In the event of a dispute arising out of this retention, the parties hereto submit to the jurisdiction and governing law, without regard to conflicts of law, of the state and federal courts located in the Commonwealth of Massachusetts. These hourly rates and costs are subject to periodic change.

Payment by wire may be made, as follows:

Citizens Bank
1 Citizens Drive
Riverside, RI 02915
ABA #011500120
Charles River Associates Incorporated
Account #1139714659

Payment by check may be made, as follows:

Charles River Associates
PO Box 845960
Boston, MA 02284-5960

PROJECT: D07458 - INSUREONE V. HALLBERG   Page: 1 of 2
OIC: Bone, John
PROJECT MANAGER: Bone, John
PRACTICE AREA: 305 - Intellectual Prop Dir-CHI
THRU - DATE: 06/08/2007


EXHIBIT B

| Project Description Invoice Num / RefNbr | DocType | Amount | Date | Days Outstanding | Payee / Total | Reserves | Retainers |
|---|---|---|---|---|---|---|---|
| **D07458 - INSUREONE V. HALLBERG** | | | | | | | |
| 033235 005521 | Invoice Payment Remaining Balance: | 9,722.55 (9,722.55) 0.00 | 6/8/2005 9/6/2005 | | Warrior Insurance Group | | |
| 034221 2048 | Invoice Payment Remaining Balance: | 30,048.90 (30,048.90) 0.00 | 7/29/2005 2/9/2006 | | Preferred Risk Services | | |
| 034553 002099 | Invoice Payment Remaining Balance: | 109,919.13 (40,000.00) 69,919.13 | 8/17/2005 2/16/2006 | 660 | Preferred Risk Services 69,919.13 | 69,919.13 | |
| 035022 5602 036963 | Invoice Payment Credit Remaining Balance: | 25,566.97 (25,566.67) (0.30) 0.00 | 9/2/2005 10/11/2005 11/25/2005 | | Warrior Insurance Group | | |
| 035666 2048 | Invoice Payment Remaining Balance: | 1,760.13 (1,760.13) 0.00 | 10/5/2005 2/9/2006 | | Preferred Risk Services | | |
| 036997 2048 | Invoice Payment Remaining Balance: | 35,353.71 (35,353.71) 0.00 | 11/30/2005 2/9/2006 | | Preferred Risk Services | | |
| 037665 | Invoice Remaining Balance: | 31,373.22 31,373.22 | 1/6/2006 | 518 | 31,373.22 31,373.22 | | |
| 038947 RETAINER | Invoice Payment | 6,882.31 (4,367.90) | 2/28/2006 5/27/2005 | 465 | Warrior Insurance Group Inc. - Retainer | | 2,514.41 |

PROJECT: D07458 - INSUREONE V. HALLBERG  Page: 2 of 2
OIC: Bone, John
PROJECT MANAGER: Bone, John
PRACTICE AREA: 305 - Intellectual Prop Dir-CHI
THRU - DATE: 06/08/2007

| Project Description Invoice Num / RefNbr | DocType | Amount | Date | Days Outstanding | Payee / Total | Reserves | Retainers |
|---|---|---|---|---|---|---|---|
| | | Remaining Balance: 2,514.41 | | | 2,514.41 | | |
| 039591 RETAINER | Invoice | 10,632.10 | 3/29/2006 | | | | |
| | Payment | (10,632.10) | 5/27/2005 | | Warrior Insurance Group Inc. - Retainer | | |
| | | Remaining Balance: 0.00 | | | | | |

Project Total: 103,806.76  103,806.76  0.00

Total Billed: 261,259.02
Total Credits: (0.30)
Total Payments: (157,451.96)
Total Debits: 0.00
Total Receivables: 103,806.76