UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES RIVER ASSOCIATES, INC.; a Massachusetts corporation authorized to transact business in Illinois, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.   08-C-496 |
| J. P. HOLDINGS, INC., an Illinois corporation, and JAMES P. HALLBERG, individually, | ) ) ) ) | |
| Defendants. | ) ) | |

PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE
DEFENSES OF DEFENDANT J.P. HOLDINGS, INC.

**NOW COMES** Plaintiff, CHARLES RIVER ASSOCIATES, INC. ("CRA"), by and through its attorneys, COSTON & RADEMACHER, and for its Motion (the "Motion") to Strike the Affirmative Defenses of Defendant, J.P. HOLDINGS, INC. ("JPH"), states as follows:

## I.  INTRODUCTION

In order to comply with the meet and confer requirement of LR 37.2, counsel for Plaintiff and counsel for Defendant discussed Defendant's Affirmative Defenses on the afternoon of May 1, 2008, via telephone, from their respective offices.  At that time, the parties agreed that counsel for Plaintiff would need to file a response to the Affirmative Defenses in order to preserve its client's rights.  Such response follows:

On or about January 24, 2008, Plaintiff CRA filed its Complaint against JPH in the above-captioned cause.  The subject of the Complaint is Defendant's breach of contract as related to expert witness services provided by InteCap (an entity that has since been acquired by

Plaintiff) to Defendant.  Prior to the events that created the basis for this lawsuit, Defendant engaged the services of non-party, Schwartz, Cooper, Greenberger & Krauss ("SCGK"). Subsequently, on or about April 6, 2005, JPH, through their agent SCGK, signed a retention letter (the "Agreement") with CRA for CRA to provide consulting expert services to JPH.

On or about April 28, 2008, Defendant filed its Amended Answer and Affirmative Defenses.  Defendant's five (5) Affirmative Defenses are as follows: (1) Non-party to contract; (2) failure by Plaintiff to mitigate its damages; (3) unauthorized charges; (4) standing; (5) failure to name a necessary party.

As shall be illustrated below, despite the contentions of the Affirmative Defenses, CRA is absolutely entitled to enforce against Defendant the contract entered into for the benefit of the Defendant.

## II. ARGUMENT

### A.    General standards

#### 1.    Standards for dismissal under the Federal Rules of Civil Procedure 12(f)

Affirmative defenses are pleadings that must comply with the Federal Rules of Civil Procedure by including a short and plain statement of the basis for the defense. Heller Fin., Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1294 (7th Cir. 1989).  Rule 12(f) allows the court to strike from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  Even though courts generally disfavor motions to strike because of their potential to cause delay, striking affirmative defenses may also increase efficiency if those pleadings provide only "unnecessary clutter." Heller, 883 F.2d at 1294.

Courts in this district have applied a three-part test when assessing the sufficiency of an affirmative defense.  Under that test the matter must be properly pleaded as an affirmative

2

defense; it must comply with Rules 8 and 9; and it must withstand a Rule 12(b)(6) challenge. Bobbit v. Victorian House, Inc., 532 F. Supp. 734, 737 (N.D. Ill. 1982). Plaintiff focuses on the third factor enumerated in Bobbit as Defendant can not prove facts in support of its affirmative defenses and therefore, they are legally insufficient.

For reasons already discussed in the foregoing Introduction to this Motion and the arguments following, Defendant's Affirmative Defenses should be stricken pursuant to Fed. R. Civ. P. 12(f).

**B.    Defendant's Affirmative Defenses**

**1.  Defendant's First Affirmative Defense should be stricken because Defendant is a party to the contract.**

The contract subject to this litigation lists the client as "James P. Hallberg, et al." The reason that Plaintiff was retained by Defendant was to provide consulting services in connection with a case in Cook County Circuit Court that both James P. Hallberg and J.P. Holdings, Inc. were named as Defendants.

**2.  Defendant's Second Affirmative Defense should be stricken because Plaintiff had no opportunity or contractual duty to mitigate damages.**

Defendant contends that Plaintiff failed to mitigate its damages. Since the work was already performed by Plaintiff, there was no opportunity to reduce or review the number of hours billed. Furthermore, Plaintiff was not obligated to mitigate damages by any agreement, contractual or otherwise. In fact, the billing and payment policy was attached to the Agreement as Exhibit A. Such exhibit clearly laid out the rights of Plaintiff to enforce payment and the duty of Defendant to make payments and the exhibit makes no mention of mitigating damages.

3

Plaintiff provided services to Defendant from May 2005 to March 2006.  Between May 2005 and February 2006, Defendant paid $157,451.96 to Plaintiff.  During this time period, Defendant took anywhere from 1 month to 6 months to pay invoices as they came due.  After Defendant made its last payment on February 16, 2006, Plaintiff only incurred an additional $17,514.41 in fees.  Plaintiff had no reason to believe that these amounts would not be paid as Defendant had a history of untimely payments, but payments nevertheless.

3.    **Defendant's Third Affirmative Defense should be stricken because Plaintiff performed services and incurred fees subject to the contract between Plaintiff and Defendant.**

In the last paragraph of the Agreement between CRA and SCGK, dated April 6, 2005, it clearly says, "If the above meets with your approval, and your client has agreed to our retention, please sign and date a copy of this letter and return it to me."  The client referred to is the Defendant in this case and the Agreement was signed and dated as instructed.  Defendant knew of and consented to the retention of Plaintiff's services by SCGK and at no point has Defendant contested that Plaintiff was indeed retained by SCGK for the benefit of Defendant.

On Page 2 of the Agreement in the second sentence of the 3rd full paragraph, it reads, "Although InteCap has been retained by SCGK to provide consulting services with respect to matters pertaining to Hallberg, we recognize that Hallberg is our ultimate client."  The Agreement was written to show that Defendant would benefit from Plaintiff's services and that Defendant was responsible for payment of Plaintiff's services.  Furthermore, Defendant did not present any proof that Plaintiff performed work that was unauthorized by the Defendant.  The Agreement explicitly states that Intecap will provide consulting expert services to SCGK at its

4

(SCGK's) request.  As Defendant's agent, SCGK authorized the work done by Plaintiff and Plaintiff did not exceed the scope of its representation.

**4.      Defendant's Fourth Affirmative Defense should be stricken because Intecap has been acquired by Plaintiff.**

On April 30, 2004, CRA acquired Intecap, Inc. (please see Exhibit A attached).  The Agreement refers to InteCap as a subsidiary of CRA.  Furthermore, Exhibit A to the Agreement says that payments should be made to CRA.  All invoices sent to Defendant were on CRA letterhead.  InteCap is no longer a legal entity.  They are an entity in name only and operate as a subsidiary of CRA.

**5.      Defendant's Fifth Affirmative Defense should be stricken because Intecap is no longer in existence and therefore can not be named as a party to this litigation.**

InteCap was a former FL corporation.  The Florida Secretary of State shows that InteCap is inactive (please see Exhibit B attached).  On April 30, 2004, CRA acquired InteCap, Inc. (please see Exhibit A attached) and therefore, CRA is the proper party for purposes of this litigation.

**WHEREFORE**, Plaintiff, CRA INTERNATIONAL, INC., a Massachusetts corporation authorized to transact business in Illinois, prays that the Affirmative Defenses of Defendant J. P. HOLDINGS, INC., an Illinois corporation, be stricken and for such further legal and equitable relief as this Court deems appropriate.

CRA INTERNATIONAL, INC.,
a Massachusetts corporation authorized
to transact business in Illinois

By:   /s/  Maysoun B. Iqal
One of its Attorneys

Patricia E. Rademacher (06205831)
Maysoun Iqal (005855)
COSTON & RADEMACHER
105 W. Adams, Suite 1400
Chicago, IL  60603
Telephone:  (312) 205-1010

6

## CERTIFICATE OF SERVICE

I, Maysoun B. Iqal, an attorney, certify that I served a copy of this Certificate of Service and attached Motion via electronic delivery on the ECF system and First Class mail to: Michael J. Raiz, Newman Raiz, LLC, Two First National Plaza, 20 South Clark Street, Suite 200, Chicago, Illinois 60603, by causing said documents to be placed into a properly addressed envelope and depositing the same in the U.S. Mail depository at 105 W. Adams, Chicago, Illinois 60603, with proper postage prepaid, at or before 5:00 p.m. on May 19th, 2008.


                              CRA INTERNATIONAL, INC.,
                              a Massachusetts corporation authorized
                              to transact business in Illinois


                    By:    /s/  Maysoun B. Iqal_____
                                  One of its Attorneys


Patricia E. Rademacher (06205831)
Maysoun Iqal (005855)
COSTON & RADEMACHER
105 W. Adams, Suite 1400
Chicago, IL 60603
Telephone: (312) 205-1010

7

# EXHIBIT A

- Australia
- Belgium
- Canada
- Mexico
- New Zealand
- United Kingdom
- United States



# We are pleased to announce
## that effective April 30, 2004,
<u>CRA International</u>
**A world wide leader in providing economic,
finance, and business consulting services,
acquired**
InteCap, Inc.
**A premier economic, valuation, and strategy
consulting firm, focused on issues
related to intellectual property,
financial markets, and complex commercial disputes.
Wait 25 seconds to be transferred to the new location
Or
Click here <<u>http://www.crai.com</u>>**

Copyright © 2001-2005. CRA International, Inc. All Rights Reserved.<u>Copyright and Trademarks</u>



# EXHIBIT B



FLORIDA DEPARTMENT OF STATE
DIVISION OF CORPORATIONS

| Home | Contact Us | E-Filing Services | Document Searches | Forms | Help |
|------|-----------|------------------|-------------------|-------|------|

**Previous on List**    **Next on List**    **Return To List**

**Events**    **No Name History**

Entity Name Search

# Detail by Entity Name

## Foreign Profit Corporation

INTECAP, INC.

## Filing Information

| | |
|---|---|
| **Document Number** | F01000000240 |
| **FEI Number** | APPLIED |
| **Date Filed** | 01/16/2001 |
| **State** | DE |
| **Status** | INACTIVE |
| **Last Event** | REVOKED FOR ANNUAL REPORT |
| **Event Date Filed** | 10/04/2002 |
| **Event Effective Date** | NONE |

## Principal Address

1601 MARKET STREET
PHILADELPHIA PA 19103

## Mailing Address

1601 MARKET STREET
PHILADELPHIA PA 19103

## Registered Agent Name & Address

C T CORPORATION SYSTEM
1200 SOUTH PINE ISLAND ROAD
PLANTATION FL 33324 US

## Officer/Director Detail

**Name & Address**

Title CD

YURKERWICH, DAVID
380 MADISON AVE., 20TH FLOOR
NEW YORK NY 10017

Title PD

MCGAVOCK, DANIEL
101 NORTH WACKER DRIVE, 16TH FLOOR
CHICAGO IL 60606

Title VD

KENNEDY, DAVID
1360 PEACHTREE STREET, 8TH FLOOR
ATLANTA GA 30309

Title VSD

BOHS, G. LEE
1601 MARKET STREET, 15TH FLOOR
PHILADELPHIA PA 19103

Title VD

SIMS, RAYMOND
101 N. WACKER DRIVE, 16TH FLOOR



EXHIBIT
B

CHICAGO IL 60606

Title VD

BRATIC, WALTER
1415 LOUISIANA, 3RD FLOOR
HOUSTON TX 77002

## Annual Reports

**No Annual Reports Filed**

## Document Images

01/16/2001 -- Foreign Profit    [ View image in PDF format ]

Note: This is not official record. See documents if question or conflict.

---

**Previous on List**    **Next on List**    **Return To List**

**Events**    No Name History

[ Entity Name Search ]

---

Home  Contact us  Document Searches  E-Filing Services  Forms  Help
Copyright and Privacy Policies
Copyright © 2007 State of Florida, Department of State.